MIN#

# NOTE

July 24, 2006                                   MARIETTA                                   GEORGIA
[Date]                                            [City]                                              [State]

2623 MEMORY LANE, DOUGLASVILLE, GA  30135

[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 169,000.00          (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is NEW CENTURY MORTGAGE CORPORATION, a California
Corporation.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of          7.125 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st          day of each month beginning on September 1, 2006          . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on August 1, 2036          , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at 18400 Von Karman, Suite 1000, Irvine, CA  92612
                                                                              or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,138.59          .

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP®-5N (0207).01                        Form 3200 1/01
          VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                              Initials:

**5.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15           calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be           5.00% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Latosha Mathis_                                    _____ (Seal)          _____ (Seal)
LATOSHA MATHIS                                          -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                                   -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                                   -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                                   -Borrower                                                    -Borrower

Pay to the order of, without recourse
Countrywide Bank, N.A.
New Century Mortgage Corporation
By:
Steve _____
V.I. _____ Management

[Sign Original Only]

VMP-5N (0207).01                                 Page 3 of 3                                          Form 3200 1/01



Return to: *CSC*
Document Recording Services
P.O. Box 3008
Tallahassee, FL 32315-3008

**This Document Prepared By:**
**NATIONSTAR MORTGAGE LLC**
**350 HIGHLAND DRIVE**
**LEWISVILLE, TX 75067**
**Tatiana Vakidis**

Doc ID:   007186400007 Type: SD
Recorded: 04/21/2014 at 09:30:00 AM
Fee Amt: $31.50 Page 1 of 7
Intangible Tax: $7.50
Douglas County Georgia
TAMMY M HOWARD Clerk Superior Court
BK 3211 PG 689-695

_____ [Space Above This Line For Recording Data] _____

| | |
|---|---|
| Original Recording Date: **August 23, 2006** | Loan No: |
| Original Loan Amount: **$169,000.00** | Investor Loan No: |
| New Money: **$2,165.09** | MIN Number: |

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 10th day of February, 2014, between **LATOSHA MATHIS** ("Borrower") and **NATIONSTAR MORTGAGE LLC, whose address is 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067** ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, ("Grantee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated **July 24, 2006** and recorded in **Book/Liber 2420,** Page **442,** of the **Official Records (Name of Records) of DOUGLAS County, GA (County and State, or other Jurisdiction)** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**2623 MEMORY LANE, DOUGLASVILLE, GA 30135,**
(Property Address)

the real property described being set forth as follows:

**See Exhibit "A" attached hereto and made a part hereof;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **February 1, 2014**, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. **$162,544.68**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument          Form 3179 1/01 (rev. 06/12)
8300b 01/14                                                                                                    (page 1 of 6)

BK 3 2 1 1 PG 0 6 9 0

2. **$28,569.68** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$133,975.00**. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of **4.000%**, from **February 1, 2014**. Borrower promises to make monthly payments of principal and interest of U.S. **$559.93**, beginning on the **1st** day of **March, 2014**, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of **4.000%** will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be **February 1, 2054**.

3. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4. If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

6. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

   (b)   all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially

BK 3211 PG0691

incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Grantee, of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

8. In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

9. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

10. This Agreement modifies an obligation secured by an existing security instrument recorded in DOUGLAS County, GA, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $160,379.59. The principal balance secured by the existing security instrument as a result of this

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument            Form 3179 1/01 (rev. 06/12)
8300b 01/14                                                                                                                 *(page 3 of 6)*

BK 3 2 1 1 PG 0 6 9 2 1

Agreement is $162,544.68, which amount represents the excess of the unpaid principal balance of this original obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

_Latosha Mathis_ Latosha Mathis _____ (Seal)
**LATOSHA MATHIS** -Borrower

_Cheryl Ball_ _____ -Witness       _X_____ -Witness
Signature                              Signature

_Cheryl Ball_ _____ -Witness       _Kelson Luma_ _____ -Witness
Print Name                             Print Name

_____ [Space Below This Line For Acknowledgments] _____

State of Georgia
County of _____

I, _Perseus Ramirez_____, a _Notary Public_____ residing in the County and State
certify that _Latosha Mathis_____

who is/are personally known to me, and this day appeared before me and acknowledged that he/she/they signed, sealed and delivered the foregoing Security Deed of his/her/their own free will and accord, for the purposes named and expressed in that instrument.

In witness, I have set my hand and official seal unto this instrument this _18th_ day of
_Feb_____, 20_14_.

_____
Signature
_Notary Public_____
Title of Officer

My _____ (commission or term of office) expires on _____ [Date].

**Perseus Ramirez
NOTARY PUBLIC
DeKalb County, GEORGIA
My Commission Expires
08/28/2017**

**NATIONSTAR MORTGAGE LLC**

By: _____ (Seal) - Lender

Name: _____Bianca Hockensmith_____

Title: _____Assistant Secretary_____

_____2/25/14_____

Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____

State of _____Texas_____

County of _____Dallas_____

I, _____Krista Marie Moore_____ , a _____Notary Public_____ residing in the County and State

certify that _____Bianca Hockensmith_____ , the _____Assistant Secretary_____ of

_____Nationstar Mortgage LLC_____ ,

who is/are personally known to me, and this day appeared before me and acknowledged that he/she/they
signed, sealed and delivered the foregoing Security Deed of his/her/their own free will And accord, for the
purposes named and expressed in that instrument.

In witness, I have set my hand and official seal unto this instrument this

_____25_____ day Of _____February_____ , 20 14 .

_____Moore_____

Signature

_____Notary Public_____

Title of Officer

KRISTA MARIE MOORE
Notary Public, State of Texas
My Commission Expires
July 15, 2017

My _____ (commission or term of office) expires on _____7-15-17_____ [Date].

BK 3 2 1 1 PG0 6 9 4

_____    Bianca Hockensmith        2/25/14
Mortgage Electronic Registration Systems, Inc - Nominee for Lender

Title:    **Assistant Secretary**
_____ [Space Below This Line For Acknowledgments] _____

State of _____ Texas _____

County of _____ Dallas _____

I, _____ Krista Marie Moore _____ , a    **Notary Public** _____ residing in the County and State

certify that _____ Bianca Hockensmith _____ , the    **Assistant Secretary** _____ of

_____ Mortgage Electronic Registration System, Inc. _____ ,

who is/are personally known to me, and this day appeared before me and acknowledged that he/she/they signed,
sealed and delivered the foregoing Security Deed of his/her/their own free will And accord, for the purposes named
and expressed in that instrument.

In witness, I have set my hand and official seal unto this instrument this

_25_ day Of _February_ , 20_14_ .

_____ (move _____
Signature

_____ Notary Public _____
Title of Officer

My _____ (commission or term of office) expires on _____ 7-15-17 _____ [Date].

KRISTA MARIE MOORE
Notary Public, State of Texas
My Commission Expires
July 15, 2017

BK 3211 PG0 695

## Exhibit "A"

Loan Number: **607354768**

Property Address: **2623 MEMORY LANE, DOUGLASVILLE, GA 30135**

Legal Description:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 136 OF THE 1ST DISTRICT, 5TH SECTION, DOUGLAS COUNTY, GEORGIA, BEING LOT 59, HARRISON MILL SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 31, PAGE 155-157, DOUGLAS COUNTY, GEORGIA RECORDS, WHICH RECORDED PLAT IS INCORPORATED HEREIN BY THIS REFERENCE AND MADE A PART OF THIS DESCRIPTION.

SCANNED

APR 28 2014

Tammy M. Howard
Clerk Superior Court
Douglas County, GA

Loan No.:
Borrower: LATOSHA MATHIS

## AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, LATOSHA MATHIS ("Borrower") desires NATIONSTAR MORTGAGE LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated July 24, 2006, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums.  These items are called "Escrow Items."  In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law.  In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount.  Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA").  The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender.  Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge.  Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to

*(Page 1 of 2)*

Loan No.:
Borrower: LATOSHA MATHIS

Lender the amount necessary to make up the shortage in accordance with RESPA.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

*Latosha Mathis*                          2.18.14

Borrower - LATOSHA MATHIS                 Date

_____            _____
Borrower -                               Date

_____            _____
Borrower -                               Date

_____            _____
Borrower -                               Date

AGREEMENT TO ESTABLISH ESCROW ACCOUNT 11/12                          *(Page 2 of 2)*

Loan No.:
Borrower: LATOSHA MATHIS

# COMPLIANCE AGREEMENT

In consideration of Nationstar Mortgage LLC ("Lender") extending funds (the "Loan"), in connection with the closing of the property located at 2623 MEMORY LANE, DOUGLASVILLE, GA 30135 (the "Closing"), the undersigned ("Borrower") agrees, upon request of Lender, its successors or assigns ("Note Holder"), or upon request of any person acting on behalf of Note Holder, to fully cooperate with Note Holder or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Closing. Borrower further agrees to execute such documents or take such action as Note Holder or such person acting on behalf of Note Holder reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Note Holder to sell, convey, seek guaranty of, or market the Loan to any entity, including without limitation an investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any bonding authority.

Borrower further agrees to comply with any such request within a reasonable period of time as specified by Note Holder or by such person acting on behalf of Note Holder. Failure to comply shall constitute default under the Note and Security Instrument that evidence the Loan, and Note Holder may pursue its available remedies.

BY SIGNING BELOW BORROWER ACKNOWLEDGES THAT BORROWER FULLY UNDERSTANDS THIS COMPLIANCE AGREEMENT OR OTHERWISE HAS SOUGHT THE ADVISE OF COUNSEL.

_Latosha Mathis_ _____     _2.18.14_____
Borrower - LATOSHA MATHIS                           Date

_____     _____
Borrower -                                                           Date

**D. LEGAL DESCRIPTION**:
The land referred to in this policy is situated in the **STATE OF GEORGIA, COUNTY OF DOUGLAS, CITY OF DOUGLASVILLE**, and described as follows:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 136 OF THE 1ST DISTRICT, 5TH SECTION, DOUGLAS COUNTY, GEORGIA, BEING LOT 59, HARRISON MILL SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 31, PAGE 155-157, DOUGLAS COUNTY, GEORGIA RECORDS, WHICH RECORDED PLAT IS INCORPORATED HEREIN BY THIS REFERENCE AND MADE A PART OF THIS DESCRIPTION.

SUBJECT TO ALL EASEMENTS AND RESTRICTIONS OF RECORD, IF ANY.

| RECORDING REQUESTED BY: | |
| --- | --- |
| BAC Home Loans Servicing, LP<br>Attn: Home Retention Division<br>7105 Corporate Drive<br>(PTX-B-36)<br>Plano, TX 75024 | |

| Doc ID # | MOD |
| --- | --- |

-------------------------------------------------SPACE ABOVE THIS LINE FOR RECORDER'S USE-------------------------------------------------

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this 9th day of March, 2010, between LATOSHA MATHIS (the "Borrower(s)") and BAC Home Loans Servicing, LP (the "Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 24th day of July, 2006 in the amount of 169,000.00 , and (2) the Note bearing the same date as, and secured by, the Security instrument, and (3) any prior agreements or modifications in effect relative to the Note and Security Instrument which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 2623 MEMORY LANE, DOUGLASVILLE, GA 30135.

The real property described being set forth as follows:

**"SAME AS IN SAID SECURITY INSTRUMENT"**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows
(notwithstanding anything to the contrary contained in the Note and Security Instrument):

1. As of the 1st day of April, 2010, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $177,586.34, consisting of the amount(s) loaned to the Borrower by the Lender which may include, but are not limited to, any past due principal payments, interest, fees and/or costs capitalized to date. All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

2. The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender.  Interest will be charged on the Unpaid Principal Balance for the first 5 years of the modified term at the yearly rate of 2.000% from the 1st day of April, 2010. The Borrower promises to make monthly payments of principal and interest of U.S. $723.36 beginning on the 1st day of May, 2010.

   Beginning on the first day of the 6th year, interest will be charged at the yearly rate of 3.000% from the 1st day of April, 2015. The Borrower promises to make monthly payments of principal and interest of U.S. $797.40 beginning on 1st day of May, 2015.

   Beginning on the first day of the 7th year, interest will be charged at the yearly rate of 4.000% from the 1st day of April, 2016. The Borrower promises to make monthly payments of principal and interest of U.S. $872.40 beginning on the 1st day of May, 2016.

   Beginning on the first day of the 8th year, interest will be charged at the yearly rate of 5.000% from the 1st day of April, 2017. The Borrower promises to make monthly payments of principal and interest of U.S. $947.85 beginning on 1st day of May, 2017.

   Beginning on the first day of the 9th year, interest will be charged at the yearly rate of 5.375% from the 1st day of April, 2018. The Borrower promises to make monthly payments of principal and interest of U.S. $975.79 beginning on the 1st day of May, 2018, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on the 1st day of August, 2036 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.

rate reduction to which Borrower may have otherwise been entitled; and

(b)  all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  The Borrower will make such payments at Payment Processing  PO Box 650070  Dallas, TX 75265 or at such other place as the Lender may require.

6.  Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

7.  In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as "Documents." Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing.

*Latosha Mathis*  Dated:  3.18.10

LATOSHA MATHIS

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.

8093  06/09

Doc ID: 001594980016 Type: GLR
Filed: 08/23/2006 at 04:28:00 PM
Fee Amt: $547.00 Page 1 of 16
Intangible Tax: $507.00
Douglas County Georgia
Cindy Chaffin Clerk Superior Court

BK **2420** PG **442-457**

Law Offices of Robert O. Akomah & Assocs.
2759 Delk Road
Suite 2590
Marietta, GA. 30067

—————————[Space Above This Line For Recording Data]—————————

# SECURITY DEED
### MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated July 24, 2006
together with all Riders to this document.

**(B)"Borrower"** is    LATOSHA MATHIS, an Unmarried Woman .

Borrower is the grantor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the grantee under this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS       Form 3011  1/01

*VMP®*-6A(GA) (0005).02
Page 1 of 14                        Initials: _LM_

VMP MORTGAGE FORMS - (800)521-7291

*16*

2420  0443

**(D) "Lender" is** NEW CENTURY MORTGAGE CORPORATION

Lender is a **Corporation**
organized and existing under the laws of **California**
Lender's address is **18400 Von Karman, Suite 1000, Irvine, CA  92612**

**(E) "Note"** means the promissory note signed by Borrower and dated **July 24, 2006**
The Note states that Borrower owes Lender One Hundred **Sixty-nine Thousand And 00/100**
Dollars
(U.S. $**169,000.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **August 1, 2036**            .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider Waiver of Borrower |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify]:Rights |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

VMP®-6A(GA) (0005).02                    Page 2 of 14              Initials: _LM_                Form 3011  1/01

BK
2420  0444

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the **County**

of                                          **DOUGLAS**                                          :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

See Exhibit "A" attached hereto and incorporated herein by reference for all purposes.

Parcel ID Number: 0136-01-5-0-00082                    which currently has the address of
2623 MEMORY LANE                                                                [Street]
DOUGLASVILLE                                  [City] , Georgia   30135   [Zip Code]
("Property Address"):

     TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials: _____

VMP-6A(GA) (0005).02                    Page 3 of 14                    Form 3011  1/01

BK
2420 0445

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: 

-6A(GA) (0005).02                 Page 4 of 14                        Form 3011   1/01

2420  0446

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



2420  0447

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6A(GA) (0005).02                    Page 6 of 14                    Initials: _LM_                    Form 3011 1/01

2420  0448

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying



BK
PG
2420  0449

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

VMP®-6A(GA) (0005).02                     Page 8 of 14          Initials: _LM_          Form 3011  1/01

2420  0450

   (b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

   **11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

   If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

   In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

   In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

   In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

   If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

   Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

   All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6A(GA) (0005).02                    Page 9 of 14          Initials: L M                Form 3011  1/01

BK      PG
2420  0451

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



BK   PG
2420  0452

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: _LM_

BK          PG

2420   0453

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

BK   PG

2420   0454

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.



BK       PG

2420  0455

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_Latosha Mathis_ _____ (Seal)       _____ (Seal)
LATOSHA MATHIS                    -Borrower                                      -Borrower

_____ (Seal)       _____ (Seal)
                                  -Borrower                                      -Borrower

_____ (Seal)       _____ (Seal)
                                  -Borrower                                      -Borrower

_____ (Seal)       _____ (Seal)
                                  -Borrower                                      -Borrower

STATE OF GEORGIA, DOUGLAS                                County ss:  COBB
    Signed, sealed and delivered in the presence of:

                                                _____
                                                Unofficial Witness

ROBERT AKOMAH
NOTARY
EXPIRES
GEORGIA
DEC. 15, 2007
PUBLIC
COBB COUNTY

                                                _Robert Akomah_ _____
                                                Notary Public, DOUGLAS            County
                                                State of Georgia

-6A(GA) (0005).02                 Page 14 of 14                    Form 3011  1/01

BK          PG

## SCHEDULE "A"    2420   0456

DESCRIPTION OF PROPERTY

All that tract or parcel of land lying and being in Land Lot 136 of the 1st District, 5th Section, Douglas County, Georgia, being Lot 59, Harrison Mill Subdivision, as per plat recorded in Plat Book 31, Page 155-157, Douglas County, Georgia records, which recorded plat is incorporated herein by this reference and made a part of this description. Said property being known as 2623 MEMORY LANE according to the present system of numbering houses in Douglas County, Georgia.

GEORGIA -
MIN:

GRANTOR: LATOSHA MATHIS

2420  0457

LENDER: NEW CENTURY MORTGAGE CORPORATION

DATE OF SECURITY DEED:  July 24, 2006

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_Latosha Mathis_ _____ (Seal)
LATOSHA MATHIS                    -Grantor

_____ (Seal)
                 -Grantor

_Robert Akomah_ _____ (Seal)
Notary Public                    -Grantor

_____ (Seal)
                 -Grantor

*[Notary seal: ROBERT AKOMAH NOTARY, EXPIRES DEC. 15, 2007, GEORGIA, COBB COUNTY, PUBLIC]*

--------------------------------------------------------------------

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_Robert Akomah_ _____         _ROBERT AKOMAH_ _____
Notary Public                             Closing Attorney

--------------------------------------------------------------------

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_Latosha Mathis_ _____         _____
LATOSHA MATHIS

_____                          _____

_____                          _____



```
Doc ID: 008747110001 Type: ASGN
Recorded: 01/14/2013 at 10:00:00 AM
Fee Amt: $7.00 Page 1 of 1
Douglas County Georgia
RHONDA G PAYNE Clerk Superior Court
BK 3089 PG 238
```

This space for Recorder's use

| | |
|---|---|
| DocID# | **Recording Requested By:**<br>**Bank of America**<br>Prepared By:<br>**Diana De Avila**<br>**800-444-4302**<br>1800 Tapo Canyon Road<br>Simi Valley, CA 93063 | When recorded mail to:<br>CoreLogic<br>Mail Stop: ASGN<br>1 CoreLogic Drive<br>Westlake, TX 76262-9823 |

Property Address:
**2623 Memory Ln**
**Douglasville, GA 30135-4453**
GA0v2M-ASD2      1/2/2013  FCL01

MIN #:                                    MERS Phone #: 888-679-6377

## ASSIGNMENT OF SECURITY DEED

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR NEW CENTURY MORTGAGE CORPORATION** its successors and assigns whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** hereby assign and transfer to **BANK OF AMERICA, N.A.** its successors and assigns whose address is **C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063** all its right, title, and interest to a certain Security Deed described below.

Original Lender:          **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"),**
                          **AS NOMINEE FOR NEW CENTURY MORTGAGE CORPORATION**
Made By:                  **LATOSHA MATHIS, AN UNMARRIED WOMAN**
Date of Security Deed:    **7/24/2006**
Original Loan Amount:     **$169,000.00**

Recorded in **Douglas County, GA** on: **8/23/2006**, book **2420**, page **442** and instrument number **N/A**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Security Deed to be executed on
**JAN 03 2013**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR NEW CENTURY MORTGAGE CORPORATION**

By: _____          By: _____
~~Richard Paz Assistant Secretary~~          Jane Martorana
                                          Assistant Secretary

Witness: ____~~Miguel Romero~~____          Witness: _____Edward Gallegos_____

State of **California**
County of **Ventura**

On __**JAN 03 2013**__ before me, ____J. Mastrolonardo____, Notary Public, personally
appeared ____Richard Paz____ and ____JANE  MARTORANA____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person (s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____mastrolonardo_____

Notary Public: ____J.Mastrolonardo____     (Seal)
My Commission Expires: ____Sept 19, 2015____

```
J. MASTROLONARDO
COMM. # 1952917
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
COMM. EXPIRES SEPT. 19, 2015
```

**RECORDED**

JAN 28 2013
Rhonda G. Payne
Superior Court



Doc ID: 011480390001 Type: ASGN
Recorded: 09/10/2019 at 09:30:00 AM
Fee Amt: $9.00 Page 1 of 1
Douglas County Georgia
TAMMY M HOWARD Clerk Superior Court

BK 3733 PG 110

When Recorded Return To:
Fannie Mae
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

**Buyer Loan Number**
**Fannie Mae Loan #**

### ASSIGNMENT OF SECURITY DEED

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **NATIONSTAR MORTGAGE LLC, WHOSE ADDRESS IS 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Security Deed with all interest secured thereby, all liens and any rights due or to become due thereon to **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE FOR LODGE SERIES IV TRUST, WHOSE ADDRESS IS 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, AZ 85251, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Security Deed is executed by LATOSHA MATHIS to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS GRANTEE, AS NOMINEE FOR NEW CENTURY MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS and recorded in Deed <u>Book 2420 and Page 442</u> in the office of the Clerk of the Superior Court of <u>DOUGLAS</u> County, <u>Georgia</u>.

Modification: REC DATE 04/21/2014, BK 3211, PG 689.
**IN WITNESS WHEREOF,** the undersigned has hereunto set its hand on **8 / 30 /2019**
(MM/DD/YYYY).
NATIONSTAR MORTGAGE LLC

By: _____
**Alan Baker**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified
authority to sign and have reviewed this document and
supporting documentation prior to signing.

_____
Shannon McKinney    Witness

*[Seal: NATIONSTAR MORTGAGE LIMITED LIABILITY COMPANY SEAL 2001]*

STATE OF FLORIDA    COUNTY OF PINELLAS
Sworn to (or affirmed) and subscribed before me, **8 / 30 /**2019 (MM/DD/YYYY), by Alan Baker as VICE PRESIDENT for NATIONSTAR MORTGAGE LLC. He/she is personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument.

_____
Julie Martens
Notary Public - STATE OF FLORIDA
Commission expires: 05/22/2022

*[Notary seal]* JULIE MARTENS
Notary Public - State of Florida
Commission # GG 221059
My Comm. Expires: May 22, 2022
Bonded Through National Notary Assn.

**Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
FNMA1        2019-RPL2-PL4-SALE    DOCR      -11:35:16 IC-11 FRMGA1

**SCANNED**

SEP 1 8 2019

Tammy M. Howard, Clerk
Superior & State Court
Douglas County, GA

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34ᵗʰ Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Doc ID: 011678680002 Type: ASGN-
Recorded: 04/21/2020 at 10:00:00 AM
Fee Amt: $25.00 Page 1 of 2
Douglas County Georgia
TAMMY M HOWARD Clerk Superior Court
BK 3807 PG 416-417

Space above for Recorder's use

Loan No:

## ASSIGNMENT OF SECURITY DEED

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE LODGE SERIES IV TRUST**, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE CABANA SERIES IV TRUST**, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain Security Deed, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Security Deed: 7/24/2006
Original Loan Amount: $169,000.00
Executed by (Borrower(s)): LATOSHA MATHIS
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS GRANTEE, AS NOMINEE FOR NEW CENTURY MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book 2420, Page 442
Document/Instrument No: 001594980016 in the Recording District of **DOUGLAS, GA**, Recorded on 8/23/2006.

Property more commonly described as: 2623 MEMORY LANE, DOUGLASVILLE, GEORGIA 30135

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 3/17/2020

**US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE LODGE SERIES IV TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **MURAT DENIZ**
Title: **VICE PRESIDENT**

Witness Name: **BRIANNA DAVIAU**

Witness Name: **ADLY SAWIRES**

The Power of Attorney, was filed in
Douglas County, State of
GA on 3-23-2020
in BK 3798 pg 628 INST# 1655940003

CS_Fannie_May19

*L*

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of      **FLORIDA**
County of    **PINELLAS**

On 3/17/2020, before me, **GERALD E. MURCH**, a Notary Public, personally appeared **MURAT DENIZ, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE LODGE SERIES IV TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that **MURAT DENIZ** signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

*[signature]*

GERALD E MURCH
Commission # GG 171364
Expires February 13, 2022
Bonded Thru Budget Notary Services

(Notary Name): **GERALD E. MURCH**
My commission expires: **2/13/2022**

**SCANNED**

**APR 30 2020**

Tammy M. Howard, Clerk
Superior & State Court
Douglas County, GA

CS_Fannie_May19

Doc ID: 008930080001 Type: ASGN
Recorded: 06/20/2013 at 10:00:00 AM
Fee Amt: $7.00 Page 1 of 1
Douglas County Georgia
TAMMY M HOWARD Clerk Superior Court
BK 3139 PG 814

This space for Recorder's use

| | |
|---|---|
| DocID#<br><br>6/28/2013<br>Property Address:<br>2623 Memory Ln<br>Douglasville, GA 30135-4453<br>GA2V2-ASD    6/4/201 | Recording Requested By:<br>Bank of America, N.A.<br>Prepared By<br>Noor Sadruddin<br><br>16001 N. Dallas Pkwy<br>Addison, TX 75001 | When recorded mail to:<br>Nationstar Mortgage, LLC<br>350 Highland Drive<br>Attention: Mosaic<br>Lewisville, TX 75067 |

## ASSIGNMENT OF SECURITY DEED

For Value Received, the undersigned holder of a Security Deed (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **NATIONSTAR MORTGAGE, LLC** whose address is **350 HIGHLAND DRIVE, LEWISVILLE, TX 75067** all beneficial interest under that certain Security Deed described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Security Deed.

Original Lender:      **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NEW CENTURY MORTGAGE CORPORATION**

Made By:         **LATOSHA MATHIS, AN UNMARRIED WOMAN**
Date of Security Deed:   **7/24/2006**
Original Loan Amount:   **$169,000.00**

Recorded in Douglas County, GA on: 8/23/2006, book 2420, page 442 and instrument number N/A

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Security Deed to be executed on 6-4-13

Bank of America, N.A.

By: *Reginald Hester*
—————————————————
Reginald Hester
Assistant Vice President

By: *Brandon D. Polite*
—————————————————
Brandon D. Polite
Assistant Vice President

Witness: *Judy A. Laurence*
—————————————————
Judy A Laurence

Witness: LATOYA N. BELL-IZEGBUNE

State of TX, County of Dallas

On 6-4-13 , before me, Teresa W. Romero , a Notary Public, personally appeared Reginald Hester, Assistant Vice President and Brandon D. Polite, Assistant Vice President of Bank of America, N.A. personally known to me to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

*Romero*
—————————————————
Notary Public: Teresa W. Romero
My Commission Expires: 5-4-2016

TERESA W. ROMERO
Notary Public, State of Texas
My Commission Expires
May 04, 2016

**RECORDED**

JUL 01 2013

Tammy M. Howard
Clerk Superior Court
Douglas County, GA